NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                                    :
J.Y.,                                               :
                                                    :
            Plaintiff,                              :
                                                    :        Civil No. 20-9894 (RBK)
            v.                                      :
                                                    :        **OPINION**
COMMISSIONER OF SOCIAL                              :
SECURITY,                                           :
                                                    :
            Defendant.                              :
_____            :

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff J.Y.'s Appeal (Doc. No. 1) from the final

decision of the Commissioner of the Social Security Administration denying her application for

Social Security Disability benefits. For the reasons set forth below the Commissioner's decision is

**VACATED** and **REMANDED.**

On January 11, 2016, Plaintiff filed an application for Disability Insurance Benefits

alleging the following disabilities since June 26, 2014: cyclic vomiting syndrome, attention-

deficit/hyperactivity disorder, major depressive disorder, and anxiety. (Doc. No. 6, R. 18). After

her applications were denied initially and upon reconsideration, Plaintiff requested a de novo

ALJ hearing. (R. 165, 179, 182, 185.) At the hearing, which was held on December 26, 2018,

Plaintiff appeared with counsel before ALJ Scott Massengill. (R. 103-05). The hearing was

continued to April 2, 2019. (R. 48-50). At that hearing, a vocational expert ("VE") testified. (R.

48-50). The ALJ issued an unfavorable decision on June 3, 2019. (R. 17-38). Plaintiff requested

a review of the ALJ's decision by the Appeals Council, which was denied on June 8, 2020. (R. 1). Thereafter, Plaintiff filed this action for judicial review. (Doc. No. 1).

## I.    LEGAL STANDARD

### A.  Sequential Evaluation Process

In order to receive benefits under the Social Security Act ("SSA"), the claimant must be disabled within the meaning of the Act. The Commissioner applies a five-step evaluation process to make this determination. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing his disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that she has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that her condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC"), and the claimant must show that she cannot perform her past work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404.1520(e). If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant can perform based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520 (a)(4)(v); *Zirnsak*,

777 F.3d at 612. If the claimant can make "an adjustment to other work," she is not disabled. *See*
20 C.F.R. § 404.1520(a)(4)(v).

### B.  Review of the Commissioner's Decision

This Court reviews the ALJ's application of the law under a de novo standard and the
ALJ's factual findings under a substantial evidence standard. *Poulos v. Comm'r of Soc. Sec.*, 474
F.3d 88, 91 (3d Cir. 2007) (citing 42 U.S.C. 405(g)); *Williams v. Sullivan*, 970 F.2d 1178, 1182
(3d Cir. 1992); and *Monsour Med. CR. v. Heckler*, 806 F.2d 1185, 1191 (3d Cir. 1986)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000).
Substantial evidence is "more than a mere scintilla but may be somewhat less than a
preponderance of the evidence." *See, e.g., Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir.
2005). Courts may not set aside the Commissioner's decision if it is supported by substantial
evidence, even if this Court "would have decided the factual inquiry differently." *Fargnoli v.
Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the
determination of substantial evidence as a "self-executing formula for adjudication." *Kent v.
Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's
decision if it did not take into account the entire record or failed to resolve an evidentiary
conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v.
Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes
not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created
by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153
(3d Cir. 1983) (citing *Kent*, 710 F.2d at 110, 114). A district court's review of a final

determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## II.    DISCUSSION

Here, Plaintiff challenges only the fifth step of the sequential evaluation process. At the fifth step, the ALJ must consider the individual's residual functional capacity, age, education, and work experience to determine whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4)(v). The other work must be available "in significant numbers in the national economy." *Jones*, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)); SSR 96-8P, 1996 SSR LEXIS 5.  Other work includes "any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). If the ALJ finds that the individual has the capacity to adjust to other work, then the ALJ must find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). However, if the ALJ finds that the individual cannot adjust to other work, then the ALJ must find that the claimant is disabled. *Id.*

Although the burden shifts to the Commissioner at this step, it remains the claimant's responsibility to provide medical or other evidence to determine her RFC. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8P. At each RFC level, the claimant must be able to perform all, or substantially all, of the activities listed. SSR 83-10.

At Step Five, an ALJ must rely on the testimony of a vocational expert ("VE") or a learned treatise to meet the burden of establishing that jobs exist in the national economy that a

claimant can perform. *Sykes v. Apfel*, 228 F.3d 259, 273 (3d Cir. 2000). Testimony of a

vocational expert typically includes one or more hypothetical questions posed by the ALJ.

*Podedworny v. Harris*, 745 F.2d 210, 218 (3d. Cir. 1984). An ALJ may only consider a

vocational expert's answer to a question for determining disability "if the question accurately

portrays the claimant's individual physical and mental impairments." *Id.* As such, a question that

fails to consider an impairment that has a serious effect on the claimant cannot be substantial

evidence in the ALJ's determination of disability. *Id.* In order for the hypothetical to be an

"accurate [ ] portray[al]," it must reflect all of the claimant's impairments. *Id.* However, "all

impairments" means only those that are medically established. *Rutherford v. Barnhart*, 399 F.3d

546, 554 (3d Cir.2005). "Limitations that are medically supported but are also contradicted by

other evidence in the record may or may not be found credible." *Id.* And, as explained,

credibility determinations are to be made by the ALJ. *See* § 404.1527. ALJs are not entitled to

consider the possibility of "reasonable accommodations" for claimants when determining the

availability of jobs that the claimant might be able to perform. *Poulos*, 474 F.3d at 95 (citing

*Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999)).

In this matter, the ALJ posted a hypothetical question to the VE regarding jobs available

to someone of Plaintiff's age and educational background who could perform light work; was off

task 5% of the time in addition to normal breaks; could have less than occasional interaction with

the general public; and could have occasional interaction with supervisors and coworkers. (R.

86). The VE responded that such an individual could perform work as an office helper,

photocopy machine operator, and order caller. (R. 86-87). The ALJ added more restrictions,

including understanding and remembering routine instructions; carrying out repetitive tasks;

making routine work-related decisions; using common sense; and dealing with occasional

changes in a routine work setting, and the VE affirmed that the same jobs would be available (R. 87).

The ALJ then asked whether the need for a trashcan or other receptacle at or near the workstation would change the availability of the jobs, and the VE responded that that would be an accommodation, which most employers would not allow. (R. 87). The ALJ followed up by asking whether most jobs have a trashcan nearby, and the VE responded that the issue was not so much the trashcan, but rather being off task while using the trashcan. (R. 88). He affirmed that being off task five percent of the time would be permitted, and he testified that as long as the trashcan was not a special trashcan, it would not be an accommodation. (R. 88). the ALJ did not obtain from the vocational expert any evidence about the incidence of jobs in which employers would allow a worker to vomit into a "regular" trash can instead of a "special" trash can. (R. 87-88.) The VE also testified that off task time exceeding ten percent in addition to regular breaks would not be tolerated, nor would absences of more than one day a month. (R. 88-89). The ALJ then posed a new hypothetical, this time specifying that the individual could perform light work; could stand up to 5 hours in a workday; could walk up to 2 hours in a workday; could sit up to 8 hours in a workday; could frequently climb ramps and stairs and never climb ladders, ropes, scaffolds; could frequently kneel or crouch; could occasionally balance, stoop, or crawl; could frequently reach in any direction; should avoid work at unprotected heights; and should avoid concentrated exposure to extreme heat and cold. (R. 89). The VE confirmed that the same jobs as before would be available with those limitations. (R. 89).

Plaintiff's counsel then asked the VE whether there would be any impact on jobs if the individual used a trashcan to vomit ten times an hour and there was an odor associated with that. (R. 91). The VE responded that there would be an impact if she was off task more than 10% of

the day because of the vomiting, and as far as the odor, it would depend on whether other workers were affected. (R. 91). Plaintiff's counsel also asked whether individuals could take breaks whenever they wanted apart from standard breaks, and the VE replied that they usually would not be permitted to do so. (R. 93).

The ALJ found that Plaintiff had not engaged in substantial gainful activity; that Plaintiff has severe impairments in the form of cyclic vomiting syndrome, attention deficit hyperactivity disorder, major depressive disorder, and anxiety disorder; and that these impairments do not meet the severity of listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. At Step 5, the ALJ found that Plaintiff has the RFC to perform light work with certain limitations to the working environment (time walking, time standing, ambient temperature, not interacting with others). The ALJ found that the limiting effects of Plaintiff's symptoms are not as severe as the Plaintiff describes them because her weight has not decreased, her teeth did not show signs of excessive vomiting, and her digestive system shows only mild change from stomach acid exposure.

The use of a special trashcan is not included in the RFC; rather, the RFC accounts for Plaintiff's vomiting by limiting her interaction with others and providing breaks. Plaintiff bears the burden of showing limitations beyond those included in the RFC.

*Poulos v. Commissioner of Social Security* is instructive. 474 F.3d 88 (3d Cir. 2007). In *Poulos*, the claimant was obese and could not use typical office chairs. *Id.* at 94. The ALJ found that his "inability to use chairs that are not designed to support his weight would not significantly erode the sedentary occupational base since sturdy chairs are typically readily available in settings where sedentary work is done." *Id.* The ALJ came up with this idea on his own; the

record did not substantiate the availability of sturdy chairs that would meet claimant's needs. *Id.* The Third Circuit remanded the case for further proceedings to develop the record. *Id.* at 95.

Here, it appears that the ALJ accounted for Plaintiff's vomiting with a limitation of being "off task" for five percent of the work day in addition to normal breaks. ALJ elicited testimony from the vocational expert confirming that five percent off task time would be permitted. But while ALJ had asked the vocational expert about special trash cans, the ALJ ultimately made no finding with respect to trash cans. It is unclear from the record what the ALJ's decision was regarding the type of trash can needed for Plaintiff. The availability of particular types of trash cans is not reflected in the vocational expert's estimation of jobs available. As in *Poulos*, the ALJ should develop the record and explain his decision regarding the workplace set-up that Plaintiff will need. The burden lies with the Commissioner to establish the availability of work for Plaintiff, so we will remand for further development of the record on the availability of jobs taking into consideration Plaintiff's potential need for a special trash can.

III.    **CONCLUSION**

For the foregoing reasons, the ALJ's determination is **VACATED** and this matter is **REMANDED** for further development of the record.


Dated: 11/29/2021                                              /s/ Robert B. Kugler
                                                               ROBERT B. KUGLER
                                                               United States District Judge

8